IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

U. S. DISTRICT COURT
Southern District of Ga.
Filed in Office
5:15 P.M
July 15    2009
Deputy Clerk

CHATHAM AREA TRANSIT )
AUTHORITY, )
)
    Plaintiff, )
)
v. ) CASE NO. CV406-282
)
FIRST TRANSIT, INC., )
)
    Defendant. )
)

## O R D E R

Before the Court is Defendant First Transit, Inc.'s ("First Transit") Motion for Attorneys' Fees.[1] (Doc. 59.) Plaintiff Chatham Area Transit Authority ("CAT") has responded in opposition. (Doc. 62.) For the reasons that follow, the Court **DENIES** the Motion.[2]

### BACKGROUND

This case arose from First Transit's alleged breach of a Management Agreement ("the Agreement"), entered into by the parties in August of 2001. (Doc. 58 at 1.) Under the

---

[1] First Transit has also filed a Motion to Seal a supplementary affidavit to be filed if the Court awards attorneys' fees. (Doc. 66.) As First Transit concedes, this Motion is moot if the Court rejects the Motion for Attorneys' Fees. (Id. at 3.) Because this Court has denied the Motion for Attorneys' Fees, the Motion to Seal is **DISMISSED AS MOOT**.

[2] As this Motion resolves the final claim in this case, the **Clerk of Court** is **DIRECTED** to **enter Judgment** in accordance with this Order and the Summary Judgment Order (Doc. 58), and **CLOSE THIS CASE**.

Agreement, First Transit was to manage the operation of the public transit system in Savannah, Georgia, for CAT. (Id.) Further, First Transit was to furnish a General Manager for the transit system, whom the parties agreed would be Scott Lansing. (Id. at 2.)

While Mr. Lansing was the General Manager, the CAT Board commenced a project to determine the feasibility of adding a transfer station to the transit system. (Id. at 2.) To that end, a contract was bid out to secure architectural and engineering services. (Id.) Ultimately, the CAT Board awarded the contract to Diedrich Niles Bolton Associates ("DNBA"). (Id.) The final contract provided an overall budget of $10,000,000, which included a lump sum fee of $1,682,564 for DNBA. (Id. at 2-3.)

After finalizing the contract, DNBA commenced work on the project. (Id. at 3.) However, local historic preservation groups provided stringent opposition, causing the Federal Transit Administration to halt the project, order CAT to explore alternative project sites, and force the reopening of Section 106[3] proceedings. (Id.) This changed the nature of the project, creating additional costs and work for DNBA. Therefore, Mr. Lansing and DNBA

---

[3] These are hearings held pursuant to 16 USC § 470f to ensure the safety of historic places.

2

amended the contract appropriately, including adding payments to DNBA. (Id.) However, Mr. Lansing never sought the CAT Board's approval for the amendments. (Doc. 1 at 8-10.)

On November 3, 2006, CAT filed suit in the Superior Court of Chatham County, Georgia, alleging that First Transit, through Mr. Lansing, breached the Management Agreement by authorizing the unapproved amendments. (Id. at 8-11.) First Transit then removed the case to this Court. (Id.) On August 14, 2008, the Honorable John F. Nangle granted in part and denied in part a Motion for Summary Judgment, holding that First Transit did not breach the Agreement and dismissing First Transit's Counterclaim as moot. (Doc. 58 at 10.) The Court reserved ruling on First Transit's claim for attorneys' fees, requesting a more thorough briefing on the issue. (Id.)

On September 12, 2008, this case was reassigned to the Honorable William T. Moore, Jr. (Doc. 61.) The parties have now fully briefed the issue of attorneys' fees, and the case is ready to proceed. (Docs. 59, 62, 64, & 65.)

## ANALYSIS

The question of attorneys' fees in this case is one of contract interpretation—whether the Management Agreement

3

obligates CAT to pay First Transit's attorneys' fees.[4] (See Doc. 59.) First Transit points to three provisions in the Agreement as bases for an award of attorneys' fees—paragraphs 19, 20(B), and 22. (Id. at 5-9.) CAT responds that First Transit is misinterpreting the contract, which nowhere requires CAT to pay First Transit's attorneys' fees in a suit alleging that the Agreement was breached. (Doc. 62.)

The contract provides that it "shall be governed by the laws of the state in which the [CAT] resides." (Doc. 59, Ex. B ¶ 34.) CAT resides in Georgia. (Doc. 1 at 2.) Accordingly, the Court applies Georgia law. The general rule in Georgia is that "parties are responsible for their own attorney fees and that an award of fees is an exception to this rule." Dept. of Transp. v. Ga. Television Co., 244 Ga. App. 750, 752, 536 S.E.2d 773, 776 (2000). Indeed, Georgia law "does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract." E.g., Cothran v. Mehosky, 286 Ga. App. 640, 641, 649 S.E.2d 838, 849 (2007), Suarez v. Halbert, 246 Ga. App. 822, 824, 543 S.E.2d 733, 735 (2000). Moreover, "courts in Georgia have consistently held that

---

[4] First Transit does not seek statutory attorneys' fees. (See Doc. 59.)

4

attorney fees are not recoverable unless <u>specifically</u> provided for by statute or contract." <u>Bearden v. City of Austell</u>, 212 Ga. App. 398, 400, 441 S.E.2d 782, 785 (1994) (citing <u>Harrison v. Harrison</u>, 208 Ga. 70, 65 S.E.2d 173 (1951)). It is against this backdrop that the Court considers the contractual arguments in this case.

I. <u>The Third Party Liability Clause (Paragraph 19)</u>

First Transit contends that the Agreement's third party liability clause entitles it to attorneys' fees. (Doc. 59, Ex. B ¶ 19.) This clause provides that

> [CAT] will indemnify, defend and hold harmless FIRST TRANSIT, its parent, subsidiaries, affiliates, officers, directors, shareholders, agents, servants, employees and assigns (collectively, "FIRST TRANSIT") from and against any and all loss, liability, claims, damages or expenses (including, but not limited to, attorneys' fees) arising out of; or related to, the management or operation of the Transit System, other [CAT] operations or business, or in any way associated with this contract, whether or not caused, in whole or in part, by the negligence of FIRST TRANSIT or its agents, servants or employees, provided, however, that the [CAT] will have no obligation to indemnify FIRST TRANSIT for fines, criminal penalties, awards or judgments arising out of willful or intentional torts, ordinary gross negligence, or fraud committed by FIRST TRANSIT, its agents, servants and employees.

(<u>Id.</u>) First Transit contends that the broad language of this clause entitles them to an award of attorneys' fees despite the lack of a third party in this suit. (Doc. 59

5

at 5-7.) First Transit further argues that even if this clause applies only to third party suits, First Transit would be entitled to attorneys' fees because any recovery by CAT would be forwarded to the Federal or State governments—third parties. (Doc. 59 at 5-7.) CAT responds that this provision extends only to suits between First Transit and third parties and that this suit does not involve a third party. (Doc. 62 at 5-6.)

The central dispute with respect to this clause is whether the title, "Third Party Liability," limits the application of the clause. First Transit argues that Suggs v. Bhd. of Locomotive Firemen and Enginemen, 106 Ga. App. 563, 127 S.E.2d 827 (1962), prohibits the Court from considering the titles in a contract when construing the contract. First Transit's reading of Suggs is overbroad. Suggs holds only that the title of a provision cannot override the text in its body. Id. at 565, S.E.2d at 829. Indeed, a limited application of Suggs is consistent with Georgia courts' repeated use of titles when construing contracts since Suggs. See, e.g., Donchi, Inc. v. Robdol, LLC, 283 Ga. App. 161, 164, 640 S.E.2d 719, 722 (2007) ("[T]he language of paragraph 16, as well as its heading, evidences the intent of the parties involved."), Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc., 262

6

Ga. App. 826, 829, 586 S.E.2d 726, 730 (2003) (finding that clause textually dissimilar to a merger clause and titled "limited warranty" was not a merger clause), <u>Giles v. Nationwide Mut. Fire Ins. Co.</u>, 199 Ga. App. 483, 484, 405 S.E.2d 112, 114 (1991) ("[T]he word 'action' must be read together with the clause heading."). Reading the provision with its title, it is clear that this paragraph was intended to provide broad coverage, but only for third party suits. Nothing in the contract suggests otherwise.

Reading the provision to be limited to third party suits does not end the inquiry. Indeed, First Transit contends that because CAT would have paid much of its recovery to the State or Federal Governments—third parties—this suit is truly between First Transit and a third party. (Doc. 59 at 7.) This contention mimics the familiar argument that the State and Federal Governments, and not CAT, are the true parties in interest for this case. (<u>See</u> Docs. 59 & 64.) "The 'real party in interest' is the party who, by substantive law, possesses the right sought to be enforced and not necessarily the person who will ultimately benefit from the recovery." <u>United States v. 936.71 Acres of Land, More or Less, in Brevard County, State of Fla.</u>,

7

418 F.2d 551, 556 (5th Cir. 1969).[5] CAT clearly possesses an interest in the right that the suit enforces—proper performance under the Agreement to which CAT was a party. Therefore, First Transit's argument that CAT is not the real party in interest fails; there is no third party to this suit. Accordingly, there is no entitlement to attorneys' fees under this provision.

II. The Insurance Clause (Paragraph 20)

First Transit contends that the insurance clause of the Agreement entitles it to attorneys' fees. (Doc. 59, Ex. B ¶ 20(A).) Specifically, First Transit relies on the part of the clause requiring CAT to provide First Transit

> a standard policy of general liability insurance . . . insuring FIRST TRANSIT, its agents, servants, and employees for their acts and omissions in connection with the management and operation of the Transit System pursuant to this Agreement.

(Id.) Since CAT never provided First Transit with this policy, First Transit contends that paragraph 20(B) is triggered, obligating CAT to

> [i]ndemnify, defend and hold FIRST TRANSIT, its agents, servants and employees harmless from and against any and all loss, liability, claims, damage, and expenses (including, without limitation, attorneys fees), resulting from or

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

> arising out of [CAT's] failure to furnish and maintain the [required] insurance policies.

(Id. ¶ 20(B).) First Transit contends that a general liability insurer would be obligated to defend this lawsuit and, therefore, under this clause CAT must pay First Transit's attorneys' fees. (Doc. 59 at 4.) CAT responds that a standard policy of general liability insurance would not cover a breach of contract case, making this provision inapplicable. (Doc. 62 at 7.)

The central question in this debate has no answer—that is, what would the phantom insurance policy have covered? On the one hand, First Transit asks the Court to assume that the policy would have covered actions for breach of contract. (Doc. 64 at 2-3.) On the other hand, CAT asks this court to assume the exact opposite. (Doc. 62 at 6-7.) Of course, insurers are free to insure anything, so long as they do not run afoul of public policy. So, this Court cannot know the specifics of the policy that CAT would have purchased. However, there are several factors that militate towards the conclusion that this provision is inapplicable to the instant case.

First, most general liability insurance policies would not provide coverage for breaches of contract. See, e.g., Custom Planning & Dev., Inc. v. Am. Nat. Fire Ins. Co., 270

Ga. App. 8, 10, 606 S.E.2d 39, 41 (2004) ("Occurrence does not mean a breach of contract . . . ."), Ga. Farm Bureau Mut. Ins. Co. v. Hall County, 262 Ga. App. 810, 811-12, 586 S.E.2d 715, 716-17 (1983). It is equally apparent that an insurer's duty to defend under most policies of general liability does not extend to breach of contract actions. See, e.g., Dynamic Cleaning Serv., Inc. v. First Fin. Ins. Co., 208 Ga. App. 37, 39, 430 S.E.2d 33, 34 (1993) ("[A]n insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy."), Batson-Cook Co. v. Aetna Ins. Co., 200 Ga. App. 571, 409 S.E.2d 41 (1991) (holding that under Plaintiff's "comprehensive" general liability insurance policy insurer had no duty to defend breach of contract case). Therefore, it is probable that the policy CAT would have purchased would not have provided First Transit with a defense in this case.

Second, CAT had the option to decide what policy to buy. (Doc. 59, Ex. B ¶ 20(A).) First Transit only had the right to approve the "insurer," it did not have the right to dictate the terms of the policy. (Id.) While CAT's failure to buy a policy gave First Transit the opportunity to dictate the terms of the policy by purchasing a policy and charging CAT under paragraph 20(B) of the Agreement,

10

First Transit never did so. (Id. ¶ 20(B).) As noted above, most general liability insurance policies would not cover a breach of contract. Given this fact, and given that CAT had the option to dictate the terms of the policy; it is improbable that First Transit would have bought such a policy. Indeed, for First Transit's argument to be correct, CAT would have had to intentionally go to extra time and expense to insure First Transit against damages incurred by CAT because of First Transit's breach of the Agreement, despite the fact that CAT was not obligated to do so. The improbability of this scenario occurring further supports the conclusion that the phantom policy would not have applied to this case.

Third, the background principles of contract law in Georgia cut against rewriting this clause to award attorneys' fees in this case. Georgia law starts from the presumption that each party will bear its own costs in a breach of contract case. Ga. Television Co., 244 Ga. App. at 752, 536 S.E.2d at 776. The parties can contract around the default rule, but must do so "specifically." See Cothran, 286 Ga. App. at 641, 649 S.E.2d at 849, Bearden, 212 Ga. App. at 400, 441 S.E.2d at 785. Fee-shifting provisions are common in contracts, yet this provision does not resemble a fee-shifting provision. See, e.g., King v.

11

Brock, 282 Ga. 56, 56, 646 S.E.2d 206, 206 (2007) (awarding fees on the basis of a fee-shifting provision), Discovery Point Franchising, Inc. v. Miller, 234 Ga. App. 68, 73, 505 S.E.2d 822, 826 (1998) (finding contract provision stating "[t]he prevailing party shall be entitled to recover reasonable attorneys' fees and court costs [from] the other party" authorized an award of attorneys' fees), Layfield v. Se. Const. Coordinators, Inc., 229 Ga. App. 71, 72, 492 S.E.2d 921, 922 (1997) (awarding attorneys' fees pursuant to contractual provision stating "[a]ll legal fees incurred by [Southeastern] in the collecting of any monies due for the contract sum will be assessed against [the Layfields]"). Here, there is nothing in either the heading or body of the provision to suggest that it was intended to be a fee-shifting provision for suits over the Management Agreement. Where the parties have not included a fee-shifting provision, this Court will not write such a provision into the contract. Sys. Unlimited, Inc. v. Cisco Sys., Inc., 221 Fed. App'x 950, 952 (11th Cir. 2007) (unpublished).

In sum, it is unlikely that either the insurance policy would have required the insurer to defend First Transit in this case or that this clause was intended to be a fee-shifting provision covering the instant suit.

12

Accordingly, the Court finds no basis in this clause for an award of attorneys' fees.

III. The Legal Counsel Clause (Paragraph 22)

First Transit contends that they are entitled to attorneys' fees under the legal counsel clause of the Agreement, which provides that

> [i]t shall be the responsibility of the [CAT] to handle all legal matters of the Transit System not covered by insurance. Whenever legal counsel is required for the benefit of the Transit System and such counsel is not provided by the [CAT], FIRST TRANSIT shall have the right to retain counsel reasonably acceptable to [CAT] and charge the cost thereof as an operating expense of the Transit System.

(Doc. 59, Ex. B ¶ 22.) First Transit contends that because the subject matter of this suit was the design of a bus transfer station, its legal costs were incurred for the transit system's benefit and may be billed to CAT. (Doc. 59 at 9.) CAT responds that this provision is inapplicable; this case was about a breach of the Management Agreement, in which First Transit's defense was for its own benefit, not the transit system's. (Doc. 62 at 8.) There are several reasons why First Transit's position is in error.

First, First Transit's position requires this Court to change the language in the Agreement from "for the benefit of the Transit System" to "related to the Transit System."

The transit system is a part of CAT, see Chatham Area Transit, http://www.catchacat.org/mission_statement.aspx, while First Transit is merely a third party engaged to manage this facet of CAT. (Doc. 59, Ex. B ¶ 1.) Here, this means First Transit was sued by the transit system. It would be paradoxical, then, to construe their defense as "for the benefit of the Transit System," when the transit system itself brought suit against First Transit for mismanagement. That is, First Transit was defending itself from the transit system; not on behalf of or alongside the transit system. This suggests that the provision is inapplicable here.

The second paradox inherent in First Transit's argument is that, if this clause is applicable, CAT could have chosen its opposing counsel in this case. (Doc. 59, Ex. B ¶ 22.) Surely, First Transit would not have entered into a contract permitting its adversary to select its counsel in a law suit. This too suggests that the parties did not intend this provision to cover the instant lawsuit.

Finally, fee-shifting provisions are common in contracts, and both parties to this the contract are sophisticated entities who were surely aware of this type of provision. See, e.g., King, 282 Ga. at 56, 646 S.E.2d at 206, Discovery Point, 234 Ga. App. at 73, 505 S.E.2d at

14

826, Layfield, 229 Ga. App. at 72, 492 S.E.2d at 922. However, this provision bears no resemblance to any sort of common fee-shifting provision. See, e.g., Discovery Point, 234 Ga. App. at 73, 505 S.E.2d at 826 ("The prevailing party shall be entitled to recover reasonable attorneys' fees and court costs [from] the other party . . ."). While "magic words are not required[,] . . . the goal of the court is to look for the intent of the parties," and, as explained above, the parties could not have intended this provision to be a fee-shifting provision for suits over the Management Agreement. Glazer v. Crescent Wallcoverings, Inc., 215 Ga. App. 492, 494, 451 S.E.2d 509, 512 (1994). The Court is bound to respect the parties' decision not to include a fee-shifting provision applicable to this case. Sys. Unlimited, 221 Fed. App'x at 952.

These problems are fatal to First Transit's argument. Clearly this provision was not intended to cover the instant case. The requirement of specificity in a contract authorizing awards of attorneys' fees, and the general rule that each party should bear its own costs, further buries the nail in the coffin now housing First Transit's argument. See Ga. Television Co., 244 Ga. App. at 752, 536 S.E.2d at 776, Bearden, 212 Ga. App. at 400, 441 S.E.2d at

785. Accordingly, the Court finds that this provision does not authorize an award of attorneys' fees in this case.

## CONCLUSION

For the aforementioned reasons, the Court finds that in this case the Management Agreement neither authorizes this Court to award attorneys' fees nor entitles First Transit to attorneys' fees. Accordingly, the Motion for Attorneys' Fees is **DENIED**.

SO ORDERED this 15th day of July, 2009.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA